IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>DON A. LANGFORD,<br><br>　　　　　　Defendant. | 8:12CV344<br><br>ORDER |

This matter is before the court on the plaintiff's Motion to Strike Affirmative Defenses (Filing No. 35). The plaintiff filed a brief (Filing No. 36) in support of the motion. The defendant filed a brief (Filing No. 38) in opposition to the motion. The plaintiff filed a brief (Filing No. 39) in reply.

## BACKGROUND

This action arises out of the defendant's, Don A. Langford (Langford), potential violations of the anti-fraud provisions of federal securities laws during 2008 and 2009. In a detailed 30-page complaint, the Securities and Exchange Commission (SEC) alleges Langford, as the chief credit officer and a senior vice-president, played a dominant role in a scheme to hide millions of dollars of loan losses from the TierOne Bank's (TierOne) regulators, auditors, and the investing public. See Filing No. 1 - Complaint.

TierOne had traditionally been a thrift bank focused on residential and agricultural loans in Nebraska, Iowa, and Kansas. *Id.* at 1. Beginning in about 2004, TierOne expanded beyond its traditional borders and began making riskier loans to real estate developers in Las Vegas, Florida, and Arizona. *Id.* When real estate prices plummeted in 2008, many of the loans had faltered or were faltering. *Id.* at 5. In June 2008, the Office of Thrift Supervision (OTS) conducted a periodic examination of TierOne and reported significant concerns with TierOne's management and financial condition. *Id.* at 5. As a result, the OTS directed TierOne to maintain higher capital

ratios.  *Id.*  The SEC alleges Langford and other senior executives then began a scheme to manipulate and materially understate TierOne's losses.  *Id.* at 2, 6.

The SEC alleges TierOne was required to report losses on loans if the value of the underlying collateral (i.e., the underlying real estate project) dropped below the book value of the loan and to record the value of real estate repossessed by TierOne, called Other Real Estate Owned (OREO), at the property's fair value.  *Id.* at 2, 6-7.  The SEC alleges that declines in value generally required TierOne to report a loss.  *Id.* at 7.  Under Generally Accepted Accounting Principles (GAAP), TierOne was required to use all current, relevant information to value the collateral or OREO property.  *Id.*  Generally, an increase in loan or OREO losses would drive TierOne's capital ratios down, which meant TierOne would be closer to falling below the OTS-mandated levels.  *Id.* at 6.  The SEC alleges TierOne's management, including Langford, "intentionally delayed the process of obtaining current appraisals for properties that had declined in value, relying instead on inaccurate data and assumptions."  *Id.* at 7.

The SEC alleges Langford was part of an informal committee that evaluated TierOne's impaired or potentially impaired loans, which were documented in spreadsheets that contained estimates of the value of the collateral underlying the loans and loan impairment determinations (the "impaired loan templates").  *Id.* at 7-8.  Langford was central to the scheme in that he managed TierOne's loan and OREO valuation process.  *Id.* at 6-8.  He was directly involved in the preparation of the so-called "impaired loan templates" that contained purported valuation estimates, and allegedly falsified the templates provided to TierOne's outside auditors.  *Id.* at 6-7, 25.  The SEC contends Langford played a key role in a scheme to inflate collateral values, hide loan losses, and thereby falsely report to the regulators as well as the investing public that TierOne was in compliance with the OTS-mandated capital ratios.  *Id.* at 13-16.  The SEC alleges Langford's conduct in this regard included:  "(1) ignoring new appraisals; (2) failing to obtain updated appraisals of collateral and OREO even when observable market conditions established that there was substantial deterioration in value since the last appraisal; (3) masking problem loans by extending additional credit to establish interest reserves ('extend and pretend'); and (4) failing to properly evaluate loans for impairments." *Id.* at 9.

2

The SEC outlines several specific actions Langford allegedly performed to further the scheme. *Id.* at 10-18. In the summer of 2008, Langford refused to sell an OREO property at a significant loss because, in Langford's words, "we no longer have the luxury of hitting the loan loss reserves." *Id.* at 10. He voiced this concern within one week of meeting with OTS to discuss TierOne's loan losses. *Id.* Later, in the fall of 2008, Langford fired an employee who requested an appraisal on an OREO property that showed TierOne should have taken an $800,000 loss, and he refused to take the write-down. *Id.* at 12. Langford then allegedly helped to extend millions of dollars in additional credit to a delinquent borrower without a new appraisal in violation of TierOne's lending policy despite stating he was "bewildered" the property was worth "even half of what we're being told it's worth." *Id.* at 15.

The SEC alleges Langford's actions allowed TierOne to mask delinquency of loans thereby delaying the recognition of any additional loss. *Id.* at 15-16. In September 2008, Langford refused to accept an offer on property stating "[w]e have a 2008 appraisal which would allow us to . . . hold at our current reserved position and that's all we can afford until we earn our way out." *Id.* at 13. The SEC alleges although Langford knew of significant deterioration in the value of the collateral, he did not order new appraisals for the properties, nor take into consideration a Las Vegas workout consultant's estimates in preparing the impaired loan templates for those loans. *Id.* at 13.

In early 2009, Langford disregarded a new appraisal on the certain property that would have resulted in a $1.8 million write-down, in spite of warnings from TierOne's special assets executive. *Id.* at 11. Further, the SEC alleges Langford continued using a four-year-old appraisal to value a major, $30 million Las Vegas loan during the first and second quarters of 2009, despite acknowledging an updated appraisal would show TierOne was "wildly deficient on collateral," and despite being informed of an updated valuation showing the property was likely worth only half the loan amount. *Id.* at 13-14. Also, the SEC alleges in the spring of 2009, Langford deleted an impairment loan template showing a delinquency that would have required a $5.8 million write-off and told TierOne's special assets executive that Langford knew certain loans were impaired, but TierOne could not afford the losses that would result from that determination. *Id.* at

3

17. In addition, the SEC alleges Langford failed to include critical information about collateral values in TierOne's impaired loan templates even though he knew those inaccurate templates would be provided to TierOne's external auditors. *Id.* at 7-8.

The SEC also alleges Langford failed to inform TierOne's accounting staff or external auditors of current, relevant valuation information on a number of loans and OREO properties. *Id.* at 11, 13-15, 16. The SEC alleges Langford did nothing in response to an email in February 2009 from TierOne's special assets executive that expressed concern about the use of outdated appraisals, listed stale appraisals, and informed Langford "astronomical" write-downs would result from properly valuing the loans. *Id.* at 19. The special assets executive asked, "In good conscience how long can we continue to believe these [loans] are properly reserved?" *Id.* Several months later, the special assets executive again wrote to Langford, reiterating the concern TierOne "refuse[d] to update collateral valuations, out of the fear of what impact these actions may have on reserve levels," and explicitly expressing fear TierOne was "misleading the public." *Id.* at 20-21. The SEC alleges Langford took no action to correct the loan and OREO losses in TierOne's financial statements, nor did he forward the email to TierOne's accounting staff or outside auditors. *Id.* Also, he made no mention of the troubling email at the Sarbanes-Oxley Committee meeting, when he provided positive assurances to the committee that no one believed the financial statements contained material misstatements or omissions. *Id.* at 21.

Further, the SEC alleges Langford played a major role in developing an internal estimate of losses embedded in TierOne's loan portfolio, but did not disclose that estimate to auditors or regulators. *Id.* at 19. Langford's initial analysis indicated TierOne needed an additional $65 million in loan loss reserves; a refined analysis, entitled the "Best/Worst Case Scenario," showed losses ranging from a "best case" of $36 million to a "worst case" of $114 million. *Id.* at 19-20. The SEC alleges Langford did not incorporate his Best/Worst Case Scenario figures into the impaired-loan templates, or share those figures with TierOnes' accounting staff or external auditors. *Id.* at 20. TierOne's outside auditors resigned when they learned the analysis had been withheld. *Id.*

4

When the OTS ultimately required TierOne to update its appraisals, the appraisals revealed more than $130 million in loan losses. *Id.* at 23. TierOne was shut down by the OTS in June 2010, and filed for bankruptcy later that month. *Id.* The SEC alleges as a result of the scheme to defraud, TierOne issued financial statements that were materially misstated in several public filings. *Id.* at 23-25.

The SEC asserts seven claims against Langford in its September 25, 2013, Complaint: 1) fraud; 2) aiding and abetting fraud; 3) circumventing internal controls by falsifying books and records; 4) falsifying books and records; 5) deceiving auditors; 6) aiding and abetting false SEC filings; and 7) aiding and abetting the filing of false books and records. *Id.* at 26-30.

On May 23, 2013, Langford filed an answer to the complaint listing several affirmative defenses. **See** Filing No. 31 - Answer. The affirmative defenses Langford asserted that are relevant to this motion are:

> FIFTH AFFIRMATIVE DEFENSE
> None of the conduct alleged in the Complaint had a material effect on the financial condition of TierOne.
> SIXTH AFFIRMATIVE DEFENSE
> None of the conduct alleged in the Complaint was the proximate cause of TierOne's failure.
> SEVENTH AFFIRMATIVE DEFENSE
> The Complaint is barred in whole or in part by the doctrine of laches.
> EIGHTH AFFIRMATIVE DEFENSE
> The Complaint is barred in whole or in part by the doctrine of estoppel.

*Id.* at 22.

On June 14, 2013, the SEC filed the instant motion to strike Langford's fifth through eighth affirmative defenses. **See** Filing No. 35 - Motion. The SEC asserts the fifth and sixth affirmative defenses pertaining to causation are not valid because whether Langford's conduct affected TierOne's financial condition is not at issue in this case. **See** Filing No. 36 - Brief p. 2-3. The SEC argues Langford's seventh affirmative defense of laches is unavailable against the SEC. *Id.* at 5 (**citing *Lee v. Spellings***, 447 F.3d 1087, 1090 (8th Cir. 2006) ("a laches defense may not be asserted against the government"). Lastly, the SEC contends estoppel is generally unavailable as a defense

5

against the government and only available when egregious government misconduct is present; therefore, Langford's eighth affirmative defense should be stricken.  *Id.* at 6-8.

Langford argues the SEC cannot place TierOne's financial condition at issue but preclude Langford from defending against such attacks.  **See** Filing No. 38 - Response p. 2.  Langford asserts if the court strikes his affirmative defenses, the court should similarly strike paragraphs 6, 87, 88, and 89 in the SEC's Complaint.[1]  *Id.* at 2-3.  Langford contends the SEC seeks to assert liability under federal law to make Langford personally liable for TierOne's collapse thus it is inappropriate to strike causation as a defense.  *Id.* at 5.  Langford argues the defense of laches was included to avoid waiver and additional discovery may be necessary to determine its applicability, therefore striking the defense is inappropriate.  *Id.* at 6.  Langford also asserts the defense of estoppel is not categorically barred against the government and the application of estoppel is a fact-based determination that requires additional discovery.  *Id.* at 7.  Lastly, Langford contends the SEC suffers no prejudice from Langford's affirmative defenses.  *Id.* at 7-8.

In reply, the SEC argues Langford fails to explain how his fifth and sixth affirmative defenses are legally sufficient to defeat the SEC's claims.  **See** Filing No. 39 - Reply p. 1-2.  The SEC argues it is not required to prove Langford caused or was responsible for TierOne's failure in order to prevail on its claims.  *Id.*  The SEC also asserts Langford's response demonstrates the sole purpose of the seventh and eighth

---

[1]      6.      The full extent of TierOne's loan-related losses did not become publicly known until late 2009, after OTS required TierOne to obtain new appraisals for its impaired loans.  TierOne ultimately disclosed over $130 million of additional loan losses.  Had TierOne recorded these additional loss provisions in the proper quarters, it would have missed the OTS-required capital ratios as of the end of December 31, 2008, and for each quarter thereafter.  Following the announcements of the additional loss provisions, TierOne's stock price dropped more than 70 percent.  TierOne eventually filed for bankruptcy shortly after the bank was shut down by OTS in June 2010.  **See** Filing No. 1 - Complaint p. 3.
         87.     In August 2009, OTS directed TierOne to obtain updated appraisals. The new appraisals revealed the actual values of TierOne's collateral for impaired loans and OREO.  On October 14, 2009, TierOne filed a Form 8-K reporting an additional $13.9 million in loan loss provisions for the second quarter of 2009.  TierOne also announced that it intended to restate its second quarter 2009 financial statements, and that the bank's capital ratios would fall below the levels required by OTS.  In the days following this news, TierOne's stock price fell over 17 percent.  *Id.* at 23.
         88.     The situation worsened as more OTS-mandated appraisals came in. On November 10, 2009, TierOne filed another Form 8-K reporting a loan loss provision of $120.2 million for the third quarter of 2009.  TierOne's stock price dropped a further 54 percent over the next three trading days.  *Id.*
         89.     TierOne was shut down by OTS on June 4, 2010, and filed for bankruptcy later that month.  *Id.*

affirmative defenses is to engage in a fishing expedition. *Id.* at 2. Finally, the SEC argues it would suffer prejudice if Langford's affirmative defenses are permitted to remain in the case because the SEC would have to devote resources to respond to discovery on irrelevant and inappropriate claims. *Id.* at 4.

## ANALYSIS

Pursuant to Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." **See** Fed. R. Civ. P. 12(f). A court possesses liberal discretion when ruling on motions to strike under Rule 12(f). ***BJC Health Sys. v. Columbia Cas. Co.***, 478 F.3d 908, 917 (8th Cir. 2007). However, courts view motions to strike with disfavor because striking "is an extreme and disfavored measure." *Id.* Accordingly, "[a] motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." ***Lunsford v. United States***, 570 F.2d 221, 229 (8th Cir. 1977) (quotation omitted). "[A] party must usually make a showing of prejudice before the court will grant a motion to strike." ***Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.***, 173 F.R.D. 275, 285 (D. Colo. 1997) (**citing** 5 C. Wright and A. Miller, ***Federal Practice and Procedure*** § 1382 (3d ed. 1990)).

Affirmative defenses are subject to Fed. R. Civ. P. 8(b)(1)(A), which requires a party "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). Additionally, Fed. R. Civ. P. 8(c) requires a party to affirmatively state any affirmative defenses. **See** Fed. R. Civ. P. 8(c). An affirmative defense with no basis in law may be stricken. **See** ***United States v. Dico, Inc.***, 266 F.3d 864, 880 (8th Cir. 2001) (determining a defense foreclosed by circuit precedent).

### A.    Fifth and Sixth Affirmative Defense

In Langford's fifth and sixth affirmative defense, Langford states "[n]one of the conduct alleged in the Complaint had a material effect on the financial condition of TierOne" and "[n]one of the conduct alleged in the Complaint was the proximate cause of TierOne's failure". **See** Filing No. 31 - Answer p. 22. Langford argues the SEC has

7

made the relationship between Langford's alleged conduct and TierOne's failure an issue in this case, thus striking these defenses would be inappropriate.  **See** Filing No. 38 - Response p. 5.  The SEC argues it is not required to prove Langford caused or was responsible for TierOne's ultimate failure in order to prevail on its claims.  **See** Filing No. 39 - Reply p. 1-2.

The SEC is charging Langford for the acts he allegedly committed as the chief credit officer and a senior vice-president of TierOne.  Whether those acts caused TierOne's failure is not at issue, only whether Langford committed such alleged acts is at issue.  TierOne's resulting financial condition and whether Langford's alleged actions had a material effect on TierOne are not elements of the SEC's claims against Langford.  Langford's defense would not defeat the SEC's claims.  Therefore, Langford's fifth affirmative defense that he did not cause TierOne's failure is irrelevant and not a valid affirmative defense.  **See *Saks v. Franklin Covey Co.***, 316 F.3d 337, 350 (2d Cir. 2003) (noting that a proper affirmative defense is one that will "'defeat the plaintiff's or prosecution's claim'") (**quoting** Black's Law Dictionary 430 (7th ed. 1999)).  Similarly, Langford's sixth affirmative defense fails as an affirmative defense because, as discussed previously, cause is not at issue.  Additionally, the court need not strike paragraphs 6, 87, 88, and 89 in the SEC's complaint as such paragraphs set forth background facts and do not allege Langford caused TierOne's bankruptcy and closure.

**B.  Seventh Affirmative Defense**

In Langford's seventh affirmative defense, Langford states "[t]he Complaint is barred in whole or in part by the doctrine of laches."  **See** Filing No. 31 - Answer p. 22. "[A] laches defense may not be asserted against the government."  ***Lee v. Spellings***, 447 F.3d 1087, 1090 (8th Cir. 2006).  The Eighth Circuit has rejected application of laches against the government thus Langford's seventh affirmative defense has no basis in law.  Therefore, Langford's seventh affirmative defense is stricken.

**C.  Eighth Affirmative Defense**

In Langford's eighth affirmative defense, Langford states "[t]he Complaint is barred in whole or in part by the doctrine of estoppel."  **See** Filing No. 31 - Answer p. 22.

The SEC argues estoppel, while not categorically barred, "is not available against the government except in the most serious of circumstances, and is applied with the upmost caution and restraint." **See** Filing No. 36 - Brief p. 6. The SEC argues Langford has not indicated any facts under which an estoppel defense could succeed. *Id.* at 6-7.

"[W]hile a party's status as a government litigant does not preclude the application of equitable estoppel, it does increase the burden an opposing party must carry in order to prevail on its estoppel claim." ***Bartlett v. U.S. Dep't of Agric.***, 716 F.3d 464, 475 (8th Cir. 2013). "To succeed on a claim of equitable estoppel against the government, a plaintiff must not only prove all the elements of equitable estoppel, but also that the government committed affirmative misconduct." ***Charleston Hous. Auth. v. U.S. Dep't of Agric.***, 419 F.3d 729, 739 (8th Cir. 2005).

> If a claimant satisfies the affirmative misconduct requirement, he then must prove the four traditional elements of estoppel: (1) a false representation by the government; (2) government intent to induce the claimant to act on the misrepresentation; (3) a lack of knowledge or inability to obtain true facts on the part of the claimant; and (4) the claimant's reliance on the misrepresentation to his detriment.

***Bartlett***, 716 F.3d at 475-76 (internal quotation omitted).

The court finds the SEC has failed to show that under no set of circumstances can Langford's eighth affirmative defense succeed or that the SEC will suffer undue prejudice by inclusion of the affirmative defense. The SEC contends Langford has not suggested any facts that would make the defense of estoppel available in this case; however, Fed. R. Civ. P. 8 requires Langford's affirmative defense be set forth "affirmatively" and "must be simple, concise, and direct", not pleaded with particularity as the SEC desires. **See** Fed. R. Civ. P. 8(c) and (d); ***Zotos v. Lindbergh Sch. Dist.***, 121 F.3d 356, 361 (8th Cir. 1997) ("[W]hile a[n affirmative] defense must be asserted in a responsive pleading, it need not be articulated with any rigorous degree of specificity, and is sufficiently raised for purposes of Rule 8 by its bare assertion.") (internal quotations omitted). Here, Langford has appropriately given the SEC fair notice of his defense. Langford's eighth affirmative defense may be addressed in a properly filed dispositive motion, rather than at this stage on a motion to strike, if necessary. Although

9

discovery places a burden on a responding party, there is no indication, at this point in the proceedings, the SEC would be unduly prejudiced during discovery by the assertion of Langford's eighth affirmative defense. The court will not allow a "fishing expedition," but the SEC's belief that the defense would be unsuccessful, does not bar Langford from asserting the defense of estoppel and attempting to support such a defense. While the court will not determine the merits of this defense at this time, the defense is not immaterial or without a basis of law.

**IT IS ORDERED**:

The plaintiff's Motion to Strike Affirmative Defenses (Filing No. 35) is granted in part and denied in part. Langford's fifth, sixth, and seventh affirmative defenses are stricken. The motion is denied in all other respects.

**ADMONITION**

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 19th day of July, 2013.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge